(No. 465)

MARVIN KERR AND MOTORS INSURANCE CORPORATION, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 12, 1960.*
*Petition of claimants for rehearing denied April 25, 1960.*

LANSDEN AND LANSDEN, Attorneys for Claimants.

GRENVILLE BEARDSLEY, Attorney General; C. ARTHUR NEBEL AND WILLIAM H. SOUTH, Assistant Attorneys General, for Respondent.

FEARER, J.

Marvin Kerr and Motors Insurance Corporation filed their complaint against the State of Illinois on November 9, 1954. Marvin Kerr is seeking to recover $4,000.00 for personal injuries, wrecker expense, loss of earnings, and the deductible portion of his collision policy with Motors Insurance Corporation. Motors Insurance Corporation, under its subrogation agreement with Marvin Kerr, is seeking to recover $530.00.

The claims are an outgrowth of an accident, which occurred on November 11, 1952 at or about the hour of 10:00 P.M., while claimant, Marvin Kerr, was driving his 1952 Pontiac automobile in a southerly direction on Illinois State Route No. 2, also known as U. S. Route No. 51, south of the city limits of Carbondale, Jackson County, Illinois, at or about one-half mile from said city limits.

The pertinent portions of the record are a verified complaint, transcript of evidence, briefs and arguments of respondent and claimant, including a reply brief of claimant.

No answer was filed by respondent. Therefore, in accordance with Rule 11 of this Court, a general traverse or denial is considered to have been filed.

In the complaint it is alleged as follows:

That at the time and place aforesaid, and at all times hereinbefore and hereinafter mentioned, claimant, Marvin Kerr, was in the exercise of due care and caution for his own safety and the safety of his automobile;

That the respondent was constructing, completing and relocating State Route No. 2 to the east and southeast of the original older Route No. 2;

That it was also constructing and completing a curve and approach leading from Route No. 2 in a southeasterly direction to connect it with the highway on the relocation of said Route No. 2;

That there were no warning signs, flares or guard rails where Route No. 2 ceased to continue in its former straight condition, and proceeded in a curve and approach to the east and southeast;

That claimant, Marvin Kerr, while driving in a

213

southerly direction, didn't know of the change in Route
No. 2, or the curve and approach leading from said
Route No. 2 and connecting with the highway on the
relocation of Route No. 2;

That, while attempting to stay on said curve and
approach, he drove his said automobile off of the curve
and approach down the embankment and into the low
area between the embankment of the relocation of said
Route No. 2 and the embankment of the curve and
approach.

Respondent was charged with several acts of negli-
gence in sub-paragraphs of the complaint, all of which
amounted to the relocation of said highway by respond-
ent, and making the connection therewith without giv-
ing adequate warning or providing sufficient lighting
or signs warning the traveling public of the change in
condition, which was the proximate cause of claimant,
Marvin Kerr, running off of said highway and into a
tree causing his injuries and the property damage to
the automobile, the latter being the basis of the claim
of Motors Insurance Corporation.

At the time of the accident Marvin Kerr was sell-
ing holiday goods, novelties and articles for the gift
trade. Also, he was operating a tavern at Elco, Illinois.

Claimant alleged he sustained injuries to his ribs,
back and muscles, and cuts and abrasions, for which he
incurred hospital, doctor and nursing bills, as set forth
in certain exhibits; also, damage to his automobile, as
set forth in certain exhibits.

There is no question but that this section of the
highway south of Carbondale was under the jurisdic-
tion of respondent, namely the Department of Public
Works and Buildings, acting through the Division of

Highways, from the time of its initial construction to the present time.

From the Departmental Report it appears that, as of October 22, 1952, traffic on S.B.I. Route No. 2 (marked Route U. S. No. 51) was routed over the following streets in the City of Carbondale:

From north to south—South Illinois Avenue to its intersection with Grand Avenue; west on Grand Avenue to its intersection with South Thompson Street; south on South Thompson Street to the south city limit; thence along a continuation of South Thompson Street, which is the centerline of land sections Nos. 28 and 33, a distance of more than one and one-quarter miles.

On November 20, 1951, the Department of Public Works and Buildings awarded a paving contract to the Triangle Construction Company. The contract bears the designation State Bond Issue Route No. 2, Section 9-1, Jackson County, and represents a relocation of S.B.I. Route No. 2 (marked Route U. S. No. 51) over a distance of 1.54 miles.

The relocation begins at the intersection of South Illinois Avenue and Grand Avenue in Carbondale, and follows a southerly and southwesterly course to a point of common meeting with the centerline of original S.B.I. Route No. 2 (marked Route U. S. No. 51). The point of common meeting is 1.21 miles south of Grand Avenue, and 1.1 miles south of the south city limit of Carbondale.

Since the angle of intersection of the old and relocated alignments is very small, the Division planned and constructed a connection between the old and new alignments at a point 1,015 feet due north of their common point of meeting. The connection consists of a portland cement concrete pavement 18 feet in width on a

215

curve having a radius of 150 feet, a length of 185.5 feet, and a grade of 5.8 per cent.

The relocated section of S.B.I. Route No. 2 (marked Route U. S. No. 51) was opened to through traffic on October 23, 1952. All route and direction signs and markers had been removed from the old location, and re-erected on the new location before October 23, 1952. The concrete connection between the south end of the old route and the new location was laid on November 3, 1952, and opened to traffic on November 10, 1952. A "stop" sign was erected on the southerly shoulder of the connection near its junction with the new location. The sign faced to the west, and was in place at the time the connection was opened to traffic, as well as when the subject accident occurred.

Claimant, Marvin Kerr, testified that he had not been in Carbondale for five or six months, and was not familiar with the relocation of said highway; that he lived in Elco, Illinois, and that his route in selling novelties usually covered Pulaski and Alexander Counties, but, this being the holiday period, he was making an extra trip coming through Vienna and Marion and over to Carbondale. At the time of the accident he was returning to his home in Elco.

The route, which he followed in coming into Carbondale, was across Route No. 13, and after getting into Carbondale he drove on University Avenue. He turned right, and drove down Thompson Street. The street north of University Avenue was Grand Avenue, and he continued on Grand Avenue to Thompson Street. which was known as old Route No. 51. He testified that this was the route, which he usually traveled when going through Carbondale, and that he did not know that the road had been changed, and the new highway

completed. While he was driving approximately forty miles an hour, it suddenly appeared to him that there was an open bridge in front of him. He applied his brakes, and "scooted" right off of the bank. He further testified that on this particular curve, which he described as a 90 degree curve, there were no signs or signals warning him of the curve, and there were no flares or barricades on this strip of highway before the curve. He didn't attempt to turn his wheel before making the curve, but he ran straight off of the road up against a tree, which threw him out of his car on the right side.

Claimant called Elza Brantley of Murphysboro, Illinois, who was employed by the Department of Public Safety as a Lieutenant in the State Police, and was in charge of District No. 13. He testified that at the time of the accident he was a State Sergeant, supervising the men in the field, and had made an investigation of this accident. It was his recollection that, at the time the new road was opened, all of the signs were taken down from old Route No. 51, which traveled past Southern Illinois University. They were moved over to the new highway, which had been opened for approximately ten days, and that, when he traveled to the scene of the accident, he traveled the old route, which was the one claimant had taken the night of the accident.

He further testified that, where the old road connected onto the new road, there was a ninety degree curve, that there were no warning signs or protective guard rails whatsoever at the curve where the accident happened warning the motorists traveling on the old route as to the dangerous condition where the connection was made. The only sign, which was in evidence,

was a stop sign, which was south of where the accident happened.

The State did not erect barricades at the south edge of the city limits of Carbondale closing off traffic when the new route was opened. The only testimony as to any signs indicating that the road had been opened were in Carbondale, and were testified to by the one witness called by the State, Mr. A. B. Harris of Carbondale, who was a Field Engineer for the Division of Highways. He testified as to the relocation of Route No. 51 around Southern Illinois University. He stated that the new road had been opened on October 23, 1952, and that by the opening of the new road it changed the route traveled through Carbondale from Grand Avenue south. He further testified as to the curve and the condition of the road at the scene where the accident occurred.

This Court has held several times that the State is not an insurer of all people, who travel on its highways, and when unexpected hazards occur, which could not reasonably have been foreseen, recoveries have been denied. *Dale Riggins* vs. *State of Illinois*, 21 C.C.R. 434.

We also held in the same case that, where the State is in the process of repairing, removing, or relocating a highway, it is duty bound to use reasonable care in warning the traveling public of a hazard, which it has voluntarily created. (Ibid. p 438.)

Respondent apparently is relying upon the fact that for approximately ten days traffic was re-routed through Carbondale, and that, had claimant followed the routings, which were changed by the relocation of the highway, he would not have been driving on the old road past Southern Illinois University, and would not have been confronted with this hazardous condition, negotiating a ninety degree curve in driving onto the new road.

On the other hand, we have claimant's testimony that he had not been in Carbondale for several months, and that he had always taken the old Route No. 51, which took him past Southern Illinois University. He had no warning, and did not have knowledge that the road had been relocated, and was following the route, which he had taken on other occasions. This apparently was true of other persons, who had had similar accidents at this same curve.

The question has arisen as to the admissibility of certain evidence offered by claimant as to other accidents on the same curve. This evidence was admitted subject to the objection of respondent. Other occurrences at the same location were testified to by Donald Shadowens and Henry Hale, the Assistant Chief of Police of Carbondale, who also investigated this accident, and testified to other accidents occurring on this particular curve during the relocation of the highway.

In the case of *Hays* vs. *Place,* 350 Ill. App. 504, 510, "Where issue as to whether defendant has such actual knowledge as to put him on notice of possibility of injury as a result of his actions was pertinent, previous similar occurrences might be shown as evidence of defendant's knowledge, and absence of prior occurrences to show his lack of knowledge".

We believe that the evidence offered was sufficient to put respondent on notice that failure to warn the traveling public on the old highway, while it was still open, did create a hazardous condition, and would subject the traveling public to a serious condition.

As to the action taken in the erection of signs after the accident in question, we have had occasion to pass on this question before. *Bovey* vs. *State of Illinois,* 22, C.C.R. 95.

219

In the Departmental Report, it is stated that, at the time of the opening of the new road, all direction signs and markers were moved from the old location, and re-erected at the new location.

Respondent is also relying upon the question of contributory negligence in addition to its defense of the relocation and the markings for the relocation of the new highway, but, from examining the testimony and the exhibits offered in evidence, we are of the opinion that claimants have maintained the burden of proving to our satisfaction that Marvin Kerr was free from any contributory negligence. It is our opinion that respondent did not adequately warn traffic traveling on the old route through Carbondale, or within a reasonable distance prior to the connection between the old and the new routes, by placing a curve sign or other signs warning the traffic traveling on said highway of the dangerous curve whereby the connection is made between the two highways. Its failure to provide adequate warning signs or barricades to keep traffic off the old route was the proximate cause of the accident resulting in claimant's injuries and the damage to his automobile.

The State in relocating, repairing or changing a highway, where such action creates a hazardous condition, is bound to use reasonable care in warning the traveling public of the hazard, which it has voluntarily created. *Riggins* vs. *State of Illinois*, 21 C.C.R. 434, 438.

As to the question of damages to be awarded the Motors Insurance Corporation by reason of its subrogation, it was stipulated that the cost of repair to the automobile was $577.50, that Marvin Kerr had a $50.00 deductible policy, and that he paid $50.00, and his insurance company paid $527.50.

Claimant, Marvin Kerr, offered and, there were received in evidence, exhibits in the following amounts:

Exhibit No. 1—Bill of Ellis R. Crandle, M.D._____$16.00
Exhibit No. 4—Holden Hospital _____ 48.15
Exhibit No. 5—Ryan Funeral Home, ambulance service_____ 15.00
Exhibit No. 6—St. Mary's Hospital, Cairo, Illinois, x-rays_____ 25.00
Exhibit No. 7—Dr. James K. Rosson, Tamms, Illinois _____ 25.00
Exhibit No. 8—Holden Hospital _____ 15.00

Marvin Kerr testified that at the time of the accident he was operating a tavern in Elco, Illinois. While he was being treated for his injuries, it was necessary for him to obtain additional help in his tavern. He employed one Shirley Cauble for a period of eight weeks at $25.00 a week, or a total amount of $200.00.

He testified further that he had a loss of earnings in his novelty business through the holiday season for which he is claiming the sum of $600.00. The testimony in this regard, even though not objected to, is speculative, and claimant has not laid the necessary foundation for the offering and proving of loss of earnings from the novelty business.

As to the claim for the loss of the use of his car for two months, claimant is asking $120.00. There is no showing in the evidence that he did rent another vehicle for the period of time that he was deprived of its use. Therefore, he did not maintain the burden of proof in this regard, as he would have had to show that after the holiday season he used the automobile in his business; that his automobile was not available for so many days; that during said period of time he rented another automobile, and paid a certain sum per day or week for its use in his business. Since claimant has failed to maintain the burden of proof as to damages for the loss of the use of the car, this Court cannot consider the item of $120.00.

As to Marvin Kerr's injuries and the length of time he was absent from his employment, Dr. Ellis R. Crandle of Carbondale, Illinois was called to testify. He testified that he was summoned to the Holden Hospital on November 11, 1952, where he made an examination of Marvin Kerr. Mr. Kerr was complaining of pain in his right chest. Dr. Crandle testified that Mr. Kerr was put to bed on November 12, 1952. X-Rays, which were made, showed that he had a double fracture of the sixth rib, a fracture of the 7th rib, and a questionable fracture of the fifth rib on the right side. Other injuries consisted primarily of multiple abrasions and contusions. His pain was confined mostly to the right side of his chest. He was discharged from the hospital on November 14, 1952. The treatment given him was bed rest for three days, sedatives, and a tight binder to control the movement of the chest. The Doctor testified that he had not examined him since the date of the accident, which was the date of the first examination, but that he was x-rayed on September 26, 1955. The report of the radiologist at that time showed that there was a healed fracture of the sixth and seventh ribs in good position and alignment. The right thoracic cage showed a healed fracture of the fifth, sixth and seventh ribs in the posterior axillary lines, union was solid. There was no active destructive change, or evidence of recent fracture. There was a slight thickening of the pleura in the right lateral chest, which was most likely secondary to the old fracture. Dr. Crandle further testified that Mr. Kerr had made a maximum recovery from the accident.

This is the only medical testimony, which we have. Marvin Kerr testified that, when he got home, he called his family doctor, and that, after seeing him, he wore a harness to support his back and ribs.

There is nothing in the record as to the length of time that he was away from his employment, other than the testimony that he employed Shirley Cauble for eight weeks to assist him in his tavern, for which he paid $200.00.

It is, therefore, the opinion of this Court that Motors Insurance Corporation should recover of and from respondent the sum of $527.50, and that Marvin Kerr be awarded the sum of $1,100.00.

## SUPPLEMENTAL OPINION

This cause now comes on before the Court on a petition for rehearing, which was filed on February 24, 1960.

The petition requests a rehearing on the claim of Marvin Kerr, and pertains only to the extent of the award given to Marvin Kerr by this Court.

The Court, in arriving at the amount of the award, took into consideration the nature and extent of Marvin Kerr's injuries based upon the only medical testimony that was offered, and upon the testimony of claimant as to his injuries, and giving to it the probative consideration, which we believed it was entitled to.

From the medical testimony, there is no question of permanency. The actual medical bills were very small. The only other testimony we had was that of Marvin Kerr himself, and, based upon all of this testimony, we considered that the award entered was adequate.

As to loss of earnings, we only considered that evidence, which we believed to be competent. In order to have made a larger award, we would have had to do so on evidence, which, in our opinion, was speculative, uncertain and remote, and not commensurate with the damages claimed by claimant.

223

Inasmuch as this Court not only passes upon questions of law in each individual case, but is a trier of the facts, and sits in the place of a jury, we reserve the right to give the evidence offered in each individual case that consideration, which we believe it is entitled to receive, and to make our award accordingly.

It is, therefore, the order of this Court that the petition for rehearing be denied.